**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2012

(Argued: June 26, 2013                    Decided: January 14, 2014)

Docket No. 12-3654-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BRIAN ANTHONY MARTINEZ,

*Plaintiff-Appellant,*

v.

BLOOMBERG LP, ANDREW LACK,

*Defendants-Appellees,*

and

CATRIONA HENDERSON,

*Defendant.*[1]
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before: NEWMAN, WINTER and DRONEY, *Circuit Judges*


Terminated employee brought action against former employer alleging discrimination. The United States District Court for the Southern District of New York (Furman, *J.*) dismissed the suit on the basis of a clause contained in employee's contract directing that all disputes arising under the agreement be resolved in England under English law. We hold that: (1) where a contract

---

[1] The Clerk of the Court is directed to amend the official caption to conform to the above.

contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause, while federal law governs the enforceability of the forum selection clause; (2) under English law, Martinez's discrimination claims "arise under" the employment agreement, within the meaning of the forum selection clause; and (3) the forum selection clause is enforceable under federal law. Accordingly, we AFFIRM the judgment of the district court.

Judge NEWMAN concurs in a separate opinion.

DANIEL J. KAISER, Kaiser Saurborn & Mair, P.C., New York, New York, *for Appellant*.

THOMAS H. GOLDEN, Willkie Farr & Gallagher LLP, New York, New York (Jill K. Grant, *of counsel*), *for Appellees*.

DRONEY, *Circuit Judge*:


Plaintiff-Appellant Brian Anthony Martinez ("Martinez") appeals from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*), dismissing his complaint for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. Martinez brought this action against his former employer, Bloomberg LP ("Bloomberg"), a privately held financial software, mass media, and data analysis company, as well as two of its employees, Andrew Lack and Catriona Henderson, alleging that his termination constituted discrimination in violation of the Americans with Disabilities Act

("ADA"), as well as state and local laws. Bloomberg and Lack moved to dismiss on the basis of a clause contained in Martinez's employment contract, which indicated that English law governed the agreement and that "any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English courts." We hold that: (1) where a contract contains both a valid choice-of-law clause and a forum selection clause, the substantive law identified in the choice-of-law clause governs the interpretation of the forum selection clause, while federal law governs the enforceability of the forum selection clause; (2) under English law, Martinez's discrimination claims "arise []under" the employment agreement, within the meaning of the forum selection clause; and (3) the forum selection clause is enforceable under federal law. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

Martinez began his career at Bloomberg on a freelance basis in September of 1999, becoming a full time producer assigned to special projects in April of 2000. After stints at the company's New York and Tokyo offices, Martinez was reassigned in 2005 to the company's London office. On February 21, 2005, Martinez executed an employment agreement that identified the London office as Martinez's "normal place of business," and included termination provisions

and grievance procedures. The agreement also contained a combined choice-of-law and choice-of-forum clause, providing that the agreement "shall be interpreted and construed in accordance with English law and any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English courts."

Throughout his career at Bloomberg, Martinez consistently received strong performance reviews, and was repeatedly promoted. Early in 2010 he was named Managing Director for Bloomberg Television International in Europe, the Middle East, Africa, and Asia. Later in the year, the company began to develop plans to bring its activities in Latin America under Martinez's supervision.

In October of 2010, Martinez informed Bloomberg employees, including Henderson, regional head of Human Resources in the United Kingdom, and Lack, chief executive officer of Bloomberg's Multimedia Division, that he had been subjected to physical abuse by his same-sex domestic partner. He sought treatment from Bloomberg's occupational healthcare provider, and was referred to a psychologist. Although Martinez was already scheduled to take annual leave from December 16, 2010 to January 3, 2011, Lack insisted that he begin an unofficial leave of absence in late November. In mid-December Lack conducted Martinez's annual performance review by telephone. Although his performance continued to be rated "Exceptional," Martinez alleges that his bonus was smaller

on a percentage basis than that of Bloomberg employees who reported to him and who received lower ratings.

Martinez returned to work on January 4, 2011. In mid-February, however, Henderson and Lack held a meeting with Martinez at which they expressed concern that he was "unwell" and that problems in his personal life would interfere with his job performance. At their urging, Martinez began a period of medical leave, despite his belief that it was unnecessary. In late March a doctor cleared Martinez to return to work, but Henderson and Lack continued to insist that Martinez not return until May.

During Martinez's period of medical leave, he began to hear through colleagues of various organizational changes at the company. In March the company removed Asia from his responsibility. On June 20, 2011, the company informed Martinez that it was exploring a corporate restructuring that would result in the elimination of his position. The following day, a U.K. solicitor representing Martinez notified the company that in her view elimination of Martinez's position likely "would give rise to claims for unfair dismissal, discrimination and whistle-blowing." On July 29, 2011, Bloomberg terminated Martinez's employment.

Martinez filed suit in the Southern District of New York on October 24, 2011. He asserted claims against Bloomberg for discrimination on the basis of

perceived disability in violation of the ADA, 42 U.S.C. § 12111, *et seq.*, and against Bloomberg, Lack, and Henderson for discrimination on the basis of perceived disability and on the basis of sexual orientation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.*, and the New York City Human Rights Law ("NYCHRL"), New York City, N.Y., Code § 8-502, *et seq.* Three days later, Martinez brought a similar proceeding before the London Employment Tribunal, alleging unfair dismissal, unfair dismissal because of protected disclosure, and unlawful deduction of wages. Martinez subsequently abandoned the English proceeding, citing the cost of litigation in the U.K. and the unavailability of prevailing party attorney's fees under English law.

On January 30, 2012, Bloomberg and Lack moved to dismiss the federal proceeding for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure.[2] The district court (Furman, *J.*) granted the motion and dismissed the claims against all defendants, concluding that the forum selection clause contained in Martinez's employment agreement encompassed all of his claims, and that it was enforceable. *See Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513, 518, 522 (S.D.N.Y. 2012). Martinez appealed.

---

[2] It appears that neither Lack nor Henderson was served with the complaint. Lack, however, subsequently joined in the motion to dismiss and the district court granted the motion as to all three defendants.

**DISCUSSION**

Martinez raises two issues on appeal. First, he contends that the district court erred in construing the forum selection clause to encompass claims of discrimination based on perceived disability that could be brought under the ADA. Second, he argues that, even if the district court was correct in its interpretation of the forum selection clause's scope, the court should find it unenforceable, both because it would have the effect of forcing him to forfeit his ADA claim, and because several aspects of English law prompted him to abandon his contemporaneous action in the U.K. and his English claims are now time-barred.

We have previously observed that "neither the Supreme Court, nor this Court, has specifically designated a single clause of Rule 12(b) . . . as the proper procedural mechanism" for enforcing a forum selection clause through a motion to dismiss. *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (quotation marks and internal citations omitted). The Supreme Court recently resolved this uncertainty in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013). The Court held that generally "the appropriate way to enforce a forum-selection clause pointing

to a state or foreign forum is through the doctrine of *forum non conveniens*," rather than Rule 12(b).[3] *Id.* at 580.

This clarification of the proper procedural vehicle for enforcing a forum selection clause, however, does not appear to alter the materials on which a district court may rely in granting a motion to dismiss based on a forum selection clause. In deciding a motion to dismiss for *forum non conveniens*, a district court normally relies solely on the pleadings and affidavits, *see Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 1987), though it may order limited discovery, *see Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 n.3 (2d Cir. 1975). Similarly, in evaluating a motion to dismiss based on a forum selection clause, a district court typically relies on pleadings and affidavits, *see Philips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007), but must conduct an evidentiary hearing to resolve disputed factual questions in favor of the defendant, *see New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997). The parties here proceeded on the basis of the pleadings and the affidavits they submitted in connection with the motion to dismiss.

*Atlantic Marine*, however, did not address the standard of review to which we subject a district court's decision to dismiss a case based on a forum selection clause. While we review a district court's decision to dismiss a case on the basis

---

[3] The Court reserved decision as to whether a party bringing an action for breach of contract might obtain dismissal under Rule 12(b)(6). *Atl. Marine*, 134 S. Ct. at 580.

8

of general *forum non conveniens* doctrine for abuse of discretion, *see Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc), we review a dismissal based specifically on a forum selection clause *de novo*, *Philips*, 494 F.3d at 384, except where the decision is based on factual findings, which we review for clear error, *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006). Although *Atlantic Marine* did not resolve this question, we need not decide it here. Since we conclude that the district court's decision to dismiss the case was proper under *de novo* review, we would reach the same conclusion under any more deferential standard of review.

## I.

Before we reach Martinez's challenges to the district court's interpretation of the forum selection clause and its finding that the clause is enforceable as applied to his discrimination claims, we address a conceptually prior issue: Where a contract contains both a choice-of-law and a choice-of-forum clause, does federal law or the body of law specified in the choice-of-law clause govern the effect of the choice-of-forum clause in an action brought in a federal district court?

In answering this question, we distinguish between the *interpretation* of a forum selection clause and the *enforceability* of the clause. To determine whether

the district court properly dismissed a claim based on a forum selection clause, we employ a four-part analysis. We ask: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive, i.e., . . . whether the parties are required to bring any dispute to the designated forum or simply *permitted* to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Philips*, 494 F.3d at 383 (emphasis in original). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." *Id.* A party can overcome this presumption only by (4) "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 383-84 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)).

The overriding framework governing the effect of forum selection clauses in federal courts, therefore, is drawn from federal law. Furthermore, "federal law should be used to determine whether an otherwise mandatory and applicable forum clause is *enforceable* under *Bremen*, i.e., step four in our analysis." *Philips*, 494 F.3d at 384; *see also Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009); *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) (per curiam); *AVC Nederland B.V. v. Atrium Inv. P'ship*, 740 F.2d 148, 156 (2d Cir. 1984). In answering

the *interpretive* questions posed by parts two and three of the four-part framework, however, we normally apply the body of law selected in an otherwise valid choice-of-law clause. *See AVC Nederland*, 740 F.2d at 155; *Philips*, 494 F.3d at 386 (noting in dicta that "we cannot understand why the interpretation of a forum selection clause should be singled out for application of any law other than that chosen to govern the interpretation of the contract as a whole"). Hence, if we are called upon to determine whether a particular forum selection clause is mandatory or permissive, *see AVC Nederland*, 740 F.2d at 155-56, or whether its scope encompasses the claims or parties involved in a certain suit, we apply the law contractually selected by the parties.

This approach reconciles respect for contracting parties' legitimate expectations with other important federal policies. If the enforceability of a forum selection clause were governed by the law specified in the choice-of-law clause, then contracting parties would have an absolute right to "oust the jurisdiction" of the federal courts. *See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509-10 (2d Cir. 1998) (even if forum selection clause is mandatory, court must determine whether "enforcement would be 'unjust' or [whether] the clause [wa]s 'invalid for such reasons as fraud or overreaching'" under *Bremen* before granting motion to dismiss). Federal law must govern the ultimate enforceability of a forum selection clause to ensure that a federal court

11

may decline to enforce a clause if "trial in the contractual forum [would] be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court," or "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 18, 15. For instance, we have declined to "adopt a *per se* rule that gives [forum selection clauses] dispositive effect where the civil rights laws are concerned," observing that "a strong federal public policy favoring enforcement of the civil rights laws" requires that courts invalidate a forum selection clause where enforcement "would frustrate that purpose." *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) (finding denial of motion to transfer under 28 U.S.C. § 1404(a) proper, despite forum selection clause, since district court acted within its discretion in holding that transfer would undermine civil rights statutes); *see also Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1365 (2d Cir. 1993) (federal courts would decline to enforce forum selection clause that undermined public policy of protecting American securities investors).

The presumptive enforceability of forum selection clauses reflects a strong federal public policy of its own, which would likewise be undermined if another body of law were allowed to govern the enforceability of a forum selection clause. In the absence of a forum selection clause, a court applying the doctrine of

12

*forum non conveniens* weighs and balances the public and private interests identified in *Gulf Oil Corp. v. Gilbert*, keeping in mind that "the plaintiff's choice of forum should rarely be disturbed." 330 U.S. 501, 508 (1947). In *Bremen*, however, the Supreme Court held that forum selection clauses require a substantial modification of the *forum non conveniens* doctrine, whereby the doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum. 407 U.S. at 6, 15. Since forum selection clauses constitute an "indispensable element in international trade, commerce, and contracting" by reducing uncertainties about where suit may be brought, the *Bremen* Court concluded that they should be invalidated only when the resisting party satisfies the "heavy burden" of showing that "it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Id.* at 13-14, 19, 18.

Although *Bremen* was a suit in admiralty, the Supreme Court has long recognized that the "the orderliness and predictability" promoted by forum selection clauses has value beyond the admiralty context. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 516 (1974) (enforcing international arbitration agreement in context of securities litigation); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (*Bremen* establishes "strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum

13

provisions"). Forum selection clauses "further vital interests of the justice system, including judicial economy and efficiency, ensure that parties will not be required to defend lawsuits in far-flung fora, and promote uniformity of result." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013) (internal quotation marks, alterations, and citations omitted); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring) ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.").

The Supreme Court again emphasized the importance of forum selection clauses in *Atlantic Marine*, a case involving 28 U.S.C. § 1404(a), which governs motions to transfer a case from one federal district court to another. The *Bremen* Court found that the lower court erred in assessing the defendant's motion to dismiss in favor of a foreign forum under the "normal *forum non conveniens* doctrine applicable in the absence of [a forum selection] clause." 407 U.S. at 6. Similarly, the *Atlantic Marine* Court found that the lower court erred in "failing to make the adjustments required in a §1404(a) analysis when the transfer motion is premised on a forum-selection clause." 134 S. Ct. at 581. And just as the *Bremen* Court concluded that a resisting party bears a "heavy burden" in overcoming a presumptively enforceable forum selection clause, 407 U.S. at 19, the *Atlantic*

*Marine* Court found that, "[i]n all but the most unusual cases . . . , 'the interest of justice' is served by holding parties to their bargain" by enforcing an intra-federal forum selection clause, 134 S. Ct. at 583. *Atlantic Marine* did not address the extent to which the "interest of justice" test for invalidating a forum selection clause pointing to another federal district court resembles the test developed under *Bremen* for invalidating a forum selection clause pointing to a nonfederal forum. *Atlantic Marine*, however, plainly reaffirms *Bremen*'s identification of a strong federal public policy supporting the enforcement of forum selection clauses.

If, however, the body of law indicated in a choice-of-law clause were to govern the enforceability of a forum selection clause, then "choice of law provisions selecting jurisdictions that disfavor forum clauses would put district courts to the awkward choice of either ignoring the parties' choice of law or invalidating their choice of forum." *Philips*, 494 F.3d at 385. In *Bense v. Interstate Battery System of America, Inc.*, we declined to apply Texas law to determine the enforceability of a forum selection clause, even though the contract's choice-of-law clause selected Texas law. 683 F.2d 718, 722 (2d Cir. 1982). Insofar as the resisting party asserted that Texas law "disfavors forum-selection clauses," we found that applying Texas law would "render the forum selection clause meaningless[] and . . . frustrate the purpose of the parties as it is clearly set forth

15

in the agreement." *Id.* Additionally, in the context of international forum selection clauses, by distinguishing between questions of interpretation and enforcement, we limit the application of foreign law at the *forum non conveniens* stage to questions about the meaning of the terms used in the contract. This prevents courts from having to engage in a potentially complex and protracted inquiry into the enforceability of a forum selection clause under foreign law, which would defeat the purpose of the forum selection clause. *Cf. Piper Aircraft v. Reno*, 454 U.S. 235, 258 (1981) ("[r]equiring extensive investigation" to establish inaccessibility of witnesses "would defeat the purpose of" motion to dismiss for *forum non conveniens*). To ensure that federal courts account for both the important interests served by forum selection clauses and the strong public policies that might require federal courts to override such clauses, therefore, federal law must govern their enforceability.

It would undermine the predictability fostered by forum selection clauses, however, if federal law — rather than the law specified in a choice-of-law clause — were to govern the *interpretation* as well as the enforceability of a forum selection clause. If "the interpretation of a forum selection clause [were] singled out for application of any law other than that chosen to govern the interpretation of the contract as a whole," *Philips*, 494 F.3d at 386, then the same word or phrase could have a different meaning in the forum selection clause than it has elsewhere in

the same contract. Applying federal law to construe a forum selection clause could frustrate the contracting parties' expectations by giving a forum selection clause a broader or narrower scope in a federal court than it was intended to have. It could transform a clause that would be construed as permissive under the parties' chosen law into a mandatory clause, or vice versa, simply because the litigation was brought in a federal court in the United States. *See Albermarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 646 (4th Cir. 2010). In the absence of a strong countervailing public policy justifying the invalidation of a forum selection clause, courts should do no "more than give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement." *Bremen*, 407 U.S. at 12. To ensure that the meaning given to a forum selection clause corresponds with the parties' legitimate expectations, courts must apply the law contractually chosen by the parties to interpret the clause.

Distinguishing between the enforceability and the interpretation of forum selection clauses, moreover, accords with the traditional divide between procedural and substantive rules developed under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). "Questions of venue and the *enforcement* of forum selection clauses are essentially procedural, rather than substantive, in nature," and therefore should be governed by federal law. *Jones*, 901 F.2d at 19 (emphasis added); *see Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994) ("[V]enue is a

17

matter that goes to process rather than substantive rights . . . ."). Although the Supreme Court recently distinguished the inquiry into whether venue is proper under 28 U.S.C. § 1391(b) from the enforceability of a forum selection clause, it made clear that the enforceability of a forum selection clause in the federal courts is resolved under federal law: 28 U.S.C. § 1404(a), which represents "merely a codification of the doctrine of *forum non conveniens*," governs "the subset of cases in which the transferee forum is within the federal system"; meanwhile, the "residual doctrine of *forum non conveniens*," which "has continuing application in federal courts," governs where the forum selection clause "call[s] for a nonfederal forum." *Atl. Marine*, 134 S. Ct. at 580 (internal quotation marks omitted).

The continued application of this residual doctrine is consistent with the federal courts' longstanding "inherent power" to generate rules promoting uniformity in the "administration of legal proceedings." *See Hanna v. Plumer*, 380 U.S. 460, 472-73 (1965). The demand for a uniform federal standard governing the enforceability of a forum selection clause is especially strong in an international context, as here. A decision invalidating a forum selection clause mandating proceedings abroad implicates foreign relations, an area of "paramount federal interest." *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001); *see also Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 427 (1964). The *Bremen*

18

test supports this interest by ensuring that federal courts give effect to forum selection clauses designating foreign fora except in a few, narrowly defined circumstances.

There is no similar federal interest, however, in overriding parties' contractually chosen body of law in favor of uniform federal rules governing the interpretation of forum selection clauses. Indeed, such an exercise in federal-common-law-making undermines the constitutional "allocation of judicial power between the state and federal systems" established in *Erie. Hanna v. Plumer*, 380 U.S. 460, 474 (1965) (Harlan, J., concurring). Contract law—including the rules governing contract interpretation—is quintessentially substantive for *Erie* purposes, and therefore primarily the realm of the states. *See Alland v. Consumers Credit Corp.*, 476 F.2d 951, 954-55 (2d Cir. 1973); *see also Avery v. Hughes*, 661 F.3d 690, 693-94 (1st Cir. 2011). In construing a forum selection clause, a court may confront a wide range of contract law issues, from the treatment of ambiguous phrases, *see Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 431 (10th Cir. 2006), to the admissibility of parol evidence, *see Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988), to successorship and the rights of third-party beneficiaries, *see Magi XXI*, 714 F.3d at 723; *Aguas Lenders*, 585 F.3d at 703. *Erie* warns against an approach that would force federal courts to generate a

sprawling "federal general common law" of contracts to govern such questions whenever they arise in the context of forum selection clauses. 304 U.S. at 78.

The instant case concededly differs from one that poses a typical *Erie* question, both because it arises under federal question jurisdiction, and because the forum selection clause here provides for proceedings abroad under foreign law, rather than in a particular state's courts under state law. Yet *Erie* does not merely articulate a choice-of-law rule for federal diversity cases. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 724-32 (2004). Rather, the decision reflects a constitutional architecture in which the federal judiciary's common-law-making power is confined to "restricted" areas where "a federal rule of decision is necessary to protect uniquely federal interests" or where "Congress has given the courts the power to develop substantive law." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981). We find no authority for federal courts to generate general rules of contract interpretation where the contracting parties have expressly selected another body of law to govern their agreement and rely on this law in litigation.

Our review of the decisions of our sister circuits supports our conclusions both with respect to the strong federal interest in a uniform standard governing enforcement of forum selection clauses in an international context, and with respect to the importance of distinguishing the enforcement of a forum selection

clause from its interpretation. The circuits are split around the question of whether a federal court sitting in diversity should apply federal or state law to determine the enforceability of a forum selection clause designating a domestic forum, although Supreme Court's decision in *Atlantic Marine* casts doubt on the latter position. *Compare Jones*, 901 F.2d at 19 (applying federal law), *and Stewart Org. Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068 (same), *aff'd*, 487 U.S. 22 (1988) (agreeing that federal law governs enforceability of forum selection clause, but holding that the relevant federal law is 28 U.S.C. § 1404(a) rather than *Bremen*), *with Gen. Eng'g Corp. v. Martin Marietta Alumina*, 783 F.2d 352, 357-58 (3d Cir. 1986) (applying state law); *see also Lambert v. Kysar*, 983 F.2d 1110, 1116 n.10 (1st Cir. 1993) (noting circuit split and declining to take a side); *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 16-17 (1st Cir. 2009) (same). Every circuit court decision that we have located involving a forum selection clause designating a foreign forum, however, has applied federal law, as articulated by *Bremen*, to decide the clause's enforceability. *See Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697, 700 (D.C. Cir. 1989); *Albermarle Corp.*, 628 F.3d at 651-52; *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997); *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009); *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 159 (7th Cir. 1993); *Manetti-Farrow, Inc.*, 858 F.2d at 513; *Riley v. Kingsley Underwriting Agencies*, 969 F.2d 953, 957 (10th Cir. 1992).

We do not identify as clear a prevailing approach on the question of what law governs the *interpretation* of forum selection clauses. In part, this derives from courts' tendency to blur the distinction between enforceability and interpretation. In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, for instance, the Ninth Circuit noted (as we also do above) that "the federal procedural issues raised by forum selection clauses significantly outweigh the state interests," concluding that "the federal rule announced in the *Bremen* controls *enforcement* of forum clauses in diversity cases." *Manetti-Farrow*, 858 F.2d at 513 (emphasis added). But it then concluded that, "because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses." *Id.* Yet we see nothing to prevent a court from first interpreting the forum selection clause under the law selected by the contracting parties to determine whether it is mandatory and encompasses the claims and parties at issue in the case, before turning to federal law to determine whether the clause should be enforced.

Indeed, three circuits have settled on this approach, though without articulating it as expressly we do now. For instance, while the Tenth Circuit employs federal common law to determine the enforceability of a foreign forum selection clause, *Riley*, 969 F.2d at 957, it has applied the law chosen by the contracting parties to resolve the interpretive question of whether a particular

forum selection clause is mandatory or permissive, *see Yavuz*, 465 F.3d at 431 (directing the lower court to determine whether the phrase "Place of courts is Fribourg" is mandatory or permissive under Swiss law, the law selected in the choice-of-law clause). Similarly, the Seventh Circuit in dicta has suggested that both the interpretation *and* enforceability of a forum selection clause should be determined based on the body of law selected in a choice-of-law clause. *See Abbott Labs. v. Takeda Pharm. Co. Ltd.*, 476 F.3d 421, 423 (7th Cir. 2007). Yet these dicta occurred in a case where there was little debate that the forum selection clause was enforceable under either federal law or the contractually chosen law, and the central issue was an *interpretive* one (the scope of the phrase "relates to" in the forum selection clause), which the court appeared to employ the contractually selected body of law to resolve. *Id.* at 423-25. Meanwhile, in line with every other federal circuit court that has addressed the issue, the Seventh Circuit has determined the enforceability of a forum selection clause designating a foreign forum as a matter of federal law under *Bremen*. *See Bonny*, 3 F.3d at 159 ("enforceability of forum selection clauses in international agreements is governed by . . . *Bremen*"). Finally, despite language indicating that "a federal court interpreting a forum selection clause must apply federal law in doing so," the Fourth Circuit in *Albermarle Corp. v. AstraZeneca UK Ltd.* actually applied the body of law identified in a choice-of-law clause—English law—to an interpretive

question raised by a forum selection clause. 628 F.3d at 650, 651. It concluded that the forum selection clause at issue should be treated as mandatory because it would have that effect under English law, even though it would be construed as permissive under federal common law. *Id.* at 651. Having resolved this interpretive question, the court then went on to find "we will give effect to the parties' selection of the English forum only if it would not be unreasonable to do so," and assessed the clause's enforceability under the federal common law articulated in *Bremen*. *Id.*

This Court has likewise at times cited federal law in interpreting a forum selection clause, even where the contract at issue also contained a choice-of-law clause. *See Magi XXI*, 714 F.3d at 721; *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994); *Roby*, 996 F.2d at 1361. There is no indication in any of these decisions, however, that the parties urged the application of any specific element of the contractually chosen body of law to govern the interpretation of the forum selection clause. These cases, then, simply stand for the proposition that litigating "parties by their acquiescence . . . may induce the trial court to assume that foreign law is similar to that of the forum," with the result that a court does not err when it articulates its decision by reference to the law of the forum. *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir. 1984). Just as parties are free, via a choice-of-law clause, to

24

select the law to govern the interpretation of a forum selection clause, nothing prevents the parties in litigation from choosing not to "rely on any distinctive features of [the selected law] and [instead to] apply general contract law principles and federal precedent to discern the meaning and scope of the forum clause." *Philips*, 494 F.3d at 386.

In this case, both parties invoked English law in their arguments about the scope of the forum selection clause, and the district court applied English law in finding that the clause encompassed Martinez's claims. *Martinez*, 883 F. Supp. 2d at 517. We find the district court's decision to apply English law correct based on the framework that we articulated in *Philips* and reaffirm here, whereby questions of enforceability are resolved under federal law, while interpretive questions—questions about the meaning and scope of a forum selection clause— are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause.

**II.**

Martinez does not challenge the validity of his employment agreement with Bloomberg. Nor does he contest that the agreement's forum selection clause was reasonably communicated to him, and that it is mandatory in effect. He contends, however, that his discrimination claims do not constitute disputes

"arising []under" his employment contract, and therefore are not governed by the forum selection clause.

This argument constitutes an interpretive dispute about "whether the claims and parties involved in the suit are subject to the forum selection clause" under part three of our four-part test. *Philips*, 494 F.3d at 383. Accordingly, we turn to the body of law selected by the contracting parties. *Id.* at 385-86. We find that, under English law, the phrase "arising []under" should be construed to encompass a claim for discrimination based on perceived disability.

Under English law, "the construction of an arbitration clause should start from the assumption that the parties, as rational businessmen, are likely to have intended any dispute arising out of the relationship into which they have entered or purported to enter to be decided by the same tribunal." *Fili Shipping Co. Ltd. v. Premium Nafta Prods. Ltd.*, [2007] UKHL 40, [13]. The English decision that articulated this interpretive principle—*Fili Shipping Co. Ltd.*, [2007] UKHL 40, referred to as the "*Fiona Trust*" case—construed an arbitration clause that, like the forum selection clause at issue here, encompassed "[a]ny dispute *arising under* this charter." *Id.* [3] (emphasis added). The claimants—Russian ship-owners who had entered into a chartering agreement—contended that the contract was procured by bribery and sought rescission. *Id.* [1]. They argued that, "as a matter of construction, the question [wa]s not a dispute arising under the

charter" because it challenged the circumstances under which the parties entered into the charter. *Id.* [4].

In the *Fiona Trust* case, the Court of Appeal—the intermediate appellate court in the English court system—discussed a number of cases drawing fine distinctions between the language employed in different arbitration and forum selection clauses. It acknowledged that "in the past the words 'arising under the contract' have sometimes been given a narrower meaning." *Fiona Trust & Holding Corp. v. Privalov*, [2007] EWCA (Civ) 20, [18]. It clearly split with this authority, however, concluding that henceforth "any jurisdiction or arbitration clause in an international commercial contract should be liberally construed," and that "[t]he words 'arising out of' should cover every dispute except a dispute as to whether there was ever a contract at all." *Id.*

The House of Lords (now the U.K. Supreme Court) approved of the "fresh start" charted by the Court of Appeal. *Fili Shipping*, [2007] UKHL 40, [12]. It indicated that interpretation of arbitration clauses should start from the assumption that "there is no rational basis upon which businessmen would be likely to wish to have questions of the validity or enforceability of the contract decided by one tribunal and questions about its performance decided by another." *Id.* [7]. Consequently, it held that courts should presume that an arbitration clause encompasses all disputes involving the relationship into which

the contracting parties entered "unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction." *Id.* [13].

Although the *Fiona Trust* case involved an arbitration clause, the decision refers broadly to the interpretation of "jurisdiction clauses." *See id.* [26]. English courts have repeatedly applied the holding in the *Fiona Trust* case to cases involving forum selection clauses. In *UBS AG v. HSH Nordbank AG*, the Court of Appeal found that "[t]he proper approach to the construction of clauses agreeing jurisdiction is to construe them widely and generously," and that "in the usual case the words 'arising out of' or 'in connection with' apply to claims arising from pre-inception matters such as misrepresentation." [2009] EWCA (Civ) 585, [82]. Similarly, in *Skype Technologies SA v. Joltid Ltd.*, in construing a choice-of-law and forum selection clause referencing "[a]ny claim arising under or relating to this Agreement," the High Court of Justice (the trial court for most significant cases in the English system) rejected an effort to distinguish between clauses covering "any claim" versus "any dispute." [2009] EWHC 2783 (Ch), [3], [18]. The court found this argument was "based on an unduly narrow reading of the clause" and represented "exactly the kind of fine distinction . . . deplored in *Fiona Trust*." *Id.* [19].

Martinez seeks to distinguish these decisions by noting that they arose in the commercial context. He argues that different interpretive principles apply to employment contracts. Indeed, the Court of Appeal's decision in the *Fiona Trust* case references the important role that jurisdiction clauses play in "an international commercial context." [2007] EWCA (Civ) 20, [17]. The House of Lords similarly based its decision on assumptions about the behavior of "rational businessmen." [2007] UKHL 40, [13]. But nothing in the *Fiona Trust* case expressly limits its holding to commercial contracts, and English employment cases do not support the view that there is a distinct set of interpretive rules applicable solely to employment contracts.

In *Becket Investment Management Group Ltd. v. Hall*, the Court of Appeal confronted the question whether it should sever an unreasonably broad definition from an otherwise enforceable non-competition clause in an employment contract. [2007] EWCA (Civ) 613, [32]. The Court of Appeal observed that "[a]t one stage there was an assumption in the authorities that the courts should be reluctant to sever in favour of an employer in a restraint of trade case." *Id.* [34]. But it ultimately rejected the proposition that "there is a special rule referable to employment contracts," noting that this view "has not found favour in the more recent authorities." *Id.* [35]. Accordingly, the court

analyzed the severability question by reference to general contract law doctrines, and concluded that the definition was severable. *Id.* [35]-[44].

Similarly, in *James v. Greenwich London Borough Council*, the claimant brought an unfair dismissal claim against the borough, for which she worked under a contract with an employment agency. [2008] EWCA (Civ) 35, [3]. The Court of Appeal found that "the question whether an 'agency worker' is an employee of an end-user must be decided in accordance with common law principles of implied contract and, in some very extreme cases, by exposing sham arrangements." *Id.* [51]. Applying these general contract principles to the case, the court found that it was not necessary to imply a contract of employment between the claimant and the council, and dismissed her claim. *Id.* [52].

Martinez points to *Autoclenz Ltd. v. Belcher*, in which the U.K. Supreme Court emphasized the "critical difference" between employment cases and an "ordinary commercial dispute," because employer-employee contracting is frequently characterized by a lack of "equal bargaining power." [2011] UKSC 41, [34]. *Autoclenz*, however, does not support the proposition that a different set of interpretive rules applies to the construction of employment contracts in contrast to commercial contracts. The case involved a claim brought by car-washers, whose contract for services unambiguously identified them as independent contractors rather than employees, thereby excluding them from many labor

protections. *Id.* [6]. In concluding that an employment contract nevertheless existed between the company and the washers, the court found that "the documents did not reflect the true agreement between the parties," and consequently "the [Employment Tribunal] was entitled to disregard the terms of the written documents, in so far as they were inconsistent with" the true agreement between the parties. *Id.* [38]. *Autoclenz*, then, involved the setting aside of a sham agreement, entered into in circumstances where the unequal bargaining power was far more apparent. It thus has no bearing on an interpretive dispute about the scope of a forum selection clause in a senior executive's employment agreement, whose overall validity the parties do not contest.

Martinez next contends that his claims do not arise under the agreement because his discrimination claims do not depend upon the existence of his employment contract under either English or American law. Although under English law an employment discrimination claim is a claim for a "statutory tort," to bring a claim for employment discrimination an employee nevertheless "must establish that she was employed and was dismissed from that employment, so that to that extent reliance must be placed on the contract of employment." *Hall v. Woolston Hall Leisure Ltd.*, [2000] EWCA (Civ) 170, [42], [46]. English courts have repeatedly found that workers who provide services to an end-user under a

contract with a third-party employment agency cannot bring claims for unfair dismissal or discrimination against the end-user, since there is no employment contract between the worker and the end-user. *See Muschett v. HM Prison Serv.*, [2010] EWCA (Civ) 25, [38]; *James*, [2008] EWCA (Civ) 35, [51]. Similarly, in cases involving discrimination claims brought by claimants who lacked the legal right to work in the U.K., English courts have rejected the argument that discrimination claims constitute "statutory tort[s]" that "st[and] independently . . . from [a] contractual claim to enforce [an] employment contract." *Hounga v. Allen*, [2012] EWCA (Civ) 609, [57]. Instead, they find that the underlying illegality of the employment contract precludes a discrimination claim. *Id.* [61]; *see also Vakante v. Addey & Stanhope Sch. Governing Body*, [2004] EWCA (Civ) 1065, [28], [35].

In arguing that his discrimination claims do not "aris[e] []under" the employment contract because they are creatures of statute under both English and American law, Martinez suggests that the forum selection clause only encompasses breach of contract claims. But this is precisely the proposition that the House of Lords rejected in the *Fiona Trust* case. The *Fiona Trust* case, after all, involved allegations of bribery during the formation of the contract, not a breach of contract. [2007] UKHL 40, [1]. The allegations of misrepresentation in *UBS AG*, [2009] EWCA (Civ) 585, [5], and copyright infringement in *Skype Technologies SA*,

32

[2009] EWHC (Ch) 2783, [6], likewise were not based on breach of contract. As a leading English treatise indicates, the *Fiona Trust* case rejected "[r]easoning which pretends that claims concerning tort or bailment, arising between parties who did at least try to become contracting parties, are not claims which arise from or under the contract." Adrian Briggs, *Agreements on Jurisdiction and Choice of Law* § 4.49, at 134 (2008). The scope of a forum selection clause does not turn on "whether an ingenious pleader could frame a cause of action without actually mentioning the . . . Agreement." *Skype Technologies SA*, [2009] EWHC (Ch) 2783, [19].

Finally, Martinez observes that, under English law, contractual terms purporting to limit the U.K. Employment Tribunal's power to conduct discrimination proceedings are unenforceable, except in narrow circumstances. Equality Act, 2010, c. 5, § 144; *Clyde & Co. LLP v. Bates van Winkelhof*, [2011] EWHC 668 (QB), [42] (refusing to stay discrimination proceedings before U.K. Employment Tribunal based on arbitration agreement in membership contract with law firm); *cf. Fulham Football Club (1987) Ltd. v. Richards*, [2011] EWCA (Civ) 855, [41] ("In relation to employment and discrimination, there are statutory restrictions on the enforceability of any agreement which excludes or limits an employee's access to the employment tribunal."). Since the U.K. Employment Tribunal would likely invalidate a contractual provision "oust[ing]" its

jurisdiction in favor of a U.S. forum, Martinez urges us likewise to invalidate a forum selection clause favoring proceedings in the U.K. over the U.S.

In making this argument, Martinez invites us to apply English law to the enforceability of a forum selection clause. Interpretive rules inform the meaning ascribed to contractual terms, and contracting parties may avoid their effect by using different words. By contrast, the English rule Martinez invokes ostensibly establishes a right of access to the U.K. Employment Tribunal, which employees cannot contract away. Since our inquiry into English law is limited to the proper interpretation of the forum selection clause, the rule has no bearing on our analysis. We determine the ultimate enforceability of the clause not by reference to "the policy of Parliament," but by reference to the "federal public policy" of the United States. *Red Bull Assocs.*, 862 F.2d at 967. Assuming the correctness of Martinez's assertion that the U.K. Employment Tribunal would decline to enforce a forum selection clause that "ousts" its jurisdiction, the Tribunal's decision would have nothing to do with the proper construction of the phrase "arising []under" in Martinez's employment contract.


**III.**

Our conclusion that under English law the forum selection clause encompasses claims of discrimination based on perceived disability does not end

34

our inquiry. Rather, a finding that a forum selection clause was reasonably communicated to the resisting party, is mandatory, and encompasses the claims and parties at issue merely gives rise to a *presumption* of enforceability. *Philips*, 494 F.3d at 383. Martinez may overcome this presumption by showing that enforcement of the forum selection clause "would be unreasonable or unjust." *Id.* at 384. Unlike our previous inquiry into the scope of the forum selection clause, we determine whether Martinez has overcome the clause's presumptive enforceability under federal law as articulated in *Bremen*. *Id.* at 384.

In the Second Circuit, we determine whether a forum selection clause is invalid under *Bremen* by examining four factors that, in effect, are four subparts that fall under the final prong of our four-part framework governing the effect of forum selection clauses. We decline to enforce a forum selection clause under *Bremen* if: "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum" in which suit is brought; "or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Id.* at 392.

Here, Martinez does not argue that the incorporation of the forum selection clause in his contract was the result of fraud or overreaching, or that English anti-discrimination law is fundamentally unfair. He does, however,

35

make arguments that go to the third and fourth types of unenforceability under *Bremen.* First, he contends that, because the district court found his claims would have to be brought in England, but the U.K. Employment tribunal could not adjudicate his federal disability claims, the district court's decision subverts federal policy by effectively requiring that he forfeit his statutory rights under the ADA. Second, he argues that, because several features of English law prompted him to abandon his English proceedings, and his English claims are now likely time-barred, enforcement of the forum selection clause would deprive him of any remedy. We reject both of these arguments, and accordingly conclude that the forum selection clause is enforceable.

In determining whether "enforcement [of a forum selection clause] would contravene a strong public policy of the forum in which suit is brought," we look to federal cases or statutes—not because federal law is guiding the *interpretation* of the forum selection clause, but because such materials may constitute declarations of public policy that justifies invalidating a forum selection clause. *Bremen*, 407 U.S. at 15. In *Roby v. Corporation of Lloyd's*, for instance, we assessed the enforceability of a choice-of-forum clause selecting England in an agreement entered into by participants in the Society of Lloyd's, a U.K.-based insurance underwriting market. 996 F.2d at 1363-66. Based on the anti-waiver provision in the federal securities laws and cases explicating the policies underlying the

securities regulatory system, we identified a "strong national policy" in "deter[ing] issuers from exploiting American investors." *Id.* at 1364. We observed that, if the plaintiffs there "were able to show that available remedies in England [were] insufficient to deter British issuers from exploiting American investors through fraud, misrepresentation or inadequate disclosure, we would not hesitate to condemn the . . . forum selection . . . clause[] as against public policy." *Id.* at 1365. Along with several other circuits that confronted similar claims against Lloyd's, however, we concluded that because "there [were] ample and just remedies under English law[,] . . . we [could ]not say that the policies underlying our securities laws will be offended by the application of English law." *Id.* at 1366; *see also Bonny*, 3 F.3d at 161; *Haynsworth*, 121 F.3d at 969-70; *Riley*, 969 F.2d at 958; *Allen v. Lloyd's of London*, 94 F.3d 923, 929 (4th Cir. 1996).

Similar to the securities laws' anti-waiver provision, the ADA incorporates Title VII of the Civil Rights Act's special venue provision, which grants plaintiffs a range of possible venues in which to bring discrimination claims. 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(3); *see Bolar v. Frank*, 938 F.2d 377, 378-79 (2d Cir. 1991) (per curiam) (42 U.S.C. § 2000e-5(f)(3) governs venue for claims brought under Rehabilitation Act). The provision was designed to prevent "national companies with distant offices" from seeking to discourage claims by "forc[ing] plaintiffs to litigate far from their homes." *Passantino v. Johnson & Johnson*

37

*Consumer Prods., Inc.*, 212 F.3d 493, 505 (9th Cir. 2000). Although the enforceability of a forum selection clause is distinct from questions of venue, *see Atl. Marine*, 134 S. Ct. at 578, the inclusion of a special venue provision in an act of Congress may express a broader federal policy of ensuring access to a federal forum to enforce certain statutory claims.

Given the ADA's special venue provision, therefore, and the Act's identification of a strong federal interest in combatting discrimination based on disability, *see* 42 U.S.C. § 12101, we consider the enforceability of the forum selection clause at issue here to present a close question. *Cf. Bonny*, 3 F.3d at 160 ("[W]e have serious concerns that Lloyd's clauses operate as a prospective waiver of statutory remedies for securities violations."); *Mitsubishi Motors Corp.*, 473 U.S. at 637 n.19 (forum selection clause that operates as "prospective waiver" of statutory antitrust claims likely invalid as against public policy); *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998) (waiver of right to judicial forum for statutory claims of employment discrimination must be "clear and unmistakable" to be enforceable). We would hesitate to enforce a forum selection clause if the party resisting enforcement demonstrated that the foreign forum's anti-discrimination law was insufficient to deter employers from violating the civil rights of individuals with disabilities.

Martinez, however, has failed to make such a showing. The only purported inadequacies with English anti-discrimination law that he identifies are its shorter statute of limitations period, the unavailability of prevailing party attorney's fees, and the cost of proceeding in the U.K. To show that enforcement of a forum selection clause would contravene a strong public policy of the forum in which suit is brought, however, it is "not enough that the foreign law or procedure merely be different or less favorable than that of the United States." *Roby*, 996 F.2d at 1363. Indeed, in one respect English law appears more favorable to Martinez's claims than American law. Unlike U.S. federal law, English anti-discrimination law allows for claims based on sexual orientation, *see* Equality Act, 2010, c. 1, § 12, although Martinez chose not to invoke this provision in his English proceeding. Consequently, we find that the aspects of English law identified by Martinez are insufficient to overcome the presumptive enforceability of the forum selection clause.[4]

We also conclude that Martinez has not demonstrated the type of personal difficulties involved in litigating the matter in England that would lead us to decline to enforce the forum selection clause. *See Philips*, 494 F.3d at 393. In *Atlantic Marine*, the Supreme Court held that such "private interests" play no role

---

[4] To the extent that the other "public-interest" factors of the *forum non conveniens* analysis set forth in *Gulf Oil* may still apply here, *see Atl. Marine*, 134 S. Ct. at 582 (in adjudicating motion to transfer under 28 U.S.C. § 1404(a) based on forum selection clause, "a district court may consider arguments about public-interest factors"), their application would not result in a different outcome.

in determining whether to transfer a case based on a forum selection clause. 134 S. Ct. at 582. It concluded that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for the pursuit of the litigation." *Id.* But *Atlantic Marine* involved a motion under 28 U.S.C. § 1404(a) to transfer a case from one federal district court to another based on a forum selection clause. Forum selection clauses pointing to foreign fora present distinct challenges not raised by clauses that merely point to other federal district courts. In *Petersen v. Boeing Co.*, for instance, the Ninth Circuit, applying the *Bremen* test, directed the district court to hold an evidentiary hearing to determine whether enforcement of a forum selection clause in an employment contract mandating proceedings in Saudi Arabia would effectively deprive the plaintiff of any remedy. 715 F.3d 276, 281 (9th Cir. 2013). The court noted that the resisting party had showed that "he lacked the resources to litigate in Saudi Arabia and that he was concerned about returning to Saudi Arabia . . . in light of having been held as a 'virtual prisoner' there." *Id.*

Here, however, we need not reach the question whether a showing of private hardships might be sufficient to invalidate a forum selection clause designating a foreign forum, since we conclude that Martinez has failed to make such a showing. At the time of his termination, Martinez was a highly

40

compensated senior figure at Bloomberg. He had lived and worked in the U.K. for more than six years, purchased a home there, and taken steps towards acquiring U.K. citizenship. Under these circumstances, we do not believe that proceeding in England would be "so difficult and inconvenient" that he would "effectively . . . be deprived of his day in court." *Philips*, 494 F.3d at 392. Accordingly, we conclude that Martinez has failed to overcome the presumptive enforceability of the forum selection clause.

## CONCLUSION

For the foregoing reasons, the judgment of the district court below is **AFFIRMED**.

41

Docket No. 12-3654
Martinez v. Bloomberg LP,

Jon O. Newman, Circuit Judge, concurring:

I concur in Judge Droney's opinion applying English law to the interpretation of a forum selection clause because the parties' agreement includes a choice-of-law provision directing us to English law. I write these additional words in the hope of providing some clarification to an area of law in which some of our prior opinions might be misunderstood.

It is now generally agreed that "[t]he parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable." Restatement (Second) of Conflicts § 80 (1988 revision). "The Bremen [v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972),] and Sherk [v. Alberto-Culver Co., 417 U.S. 506 (1974),] establish a strong presumption in favor of freely negotiated choice-of-forum provisions." Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985). Occasionally, as in the pending case, consideration must be given as to which jurisdiction's law governs the interpretation of a forum selection clause. Where a federal court's jurisdiction is based on diversity of citizenship, the Supreme Court has instructed, applying Erie R.R. Co. v.

1

<u>Tompkins</u>, 304 U.S. 64 (1938), that the federal court must apply the forum state's conflict of laws rule and apply the substantive law of the state to which the forum state would look. See <u>Klaxon Co. v. Stentor Electric Manufacturing Co.</u>, 313 U.S. 487 (1941). But in <u>Klaxon</u> the parties had not included a choice-of-law clause in their agreement, and the Supreme Court had no occasion to consider whether such a clause would alter the <u>Klaxon</u> rule.

The language in the prior opinions of this Court has not always been consistent. In <u>AVC Nederland B.V. v. Atrium Investment Partnership</u>, 740 F.2d 148, 155 (2d Cir. 1984), we said that "the interpretation of a forum-selection and choice-of-law clause [specifying Dutch law] in a contract executed in the Netherlands among Dutch national and a Georgia partnership composed of Dutchmen will require the application of Dutch law to words in the Dutch language . . . ."

In <u>Butari and Son v. Attiki Importers</u>, 22 F.3d 51, 53 (2d Cir. 1994), we ruled that a forum selection clause that only "conferred" jurisdiction on a foreign forum, rather than "required" such jurisdiction, was ineffective to deny venue to the local federal forum. In making that ruling, we appeared to be applying a principle of federal procedural law to

2

interpretation of the forum selection clause.  Although the parties had included a choice-of-law clause specifying resort to the law of Greece, there is no indication in <u>Butari</u> that either party urged application of Greek law to interpretation of the forum selection clause.

In <u>Phillips v. Audio Active Ltd.</u>, 494 F.3d 378 (2d Cir. 2007), we said that the law specified in a choice-of-law clause should govern consideration of three of the four factors usually relevant to enforcement of a forum selection clause: whether the clause was reasonably communicated to the party resisting enforcement, whether the clause is mandatory or permissive, and whether the parties and claims are subject to the clause. <u>See</u> <u>id.</u> 494 F.3d at 383.  However, we applied federal law to the question whether the clause is enforceable. <u>See</u> <u>id.</u> at 384.

In <u>Roby v. Corporation of lloyd's</u>, 996 F.2d 1353, 1359 (2d Cir. 1993), we applied federal law to determine the scope of a forum selection clause despite a choice-of-law clause specifying English law, but examination of the briefs in that case reveals that neither party urged application of English law to interpretation of the forum selection clause.

An opinion issued last year contained the assertion that "federal law applies to the interpretation of forum selection clauses," Magi XXI, Inc. v. Stato Della Città Del Vaticano, 714 F.3d 714, 721 (2d Cir. 2013).[1] That statement was dictum, however, because, although there was a choice-of-law provision referring to Vatican law, neither party claimed that Vatican law should be applied to interpretation of the forum selection clause. Indeed, the Appellant explicitly informed our Court that:

> the parties have not relied on Vatican law to interpret the relevant forum selection clauses. Therefore, the Court will apply federal law to interpret the forum selection clauses in the Master License Agreement and the sublicense agreements.

Magi, Brief for Appellant at 8 n.7.

Our Court's decision in Bense v. Interstate Battery System of America, Inc., 683 F.2d 718 (2d Cir. 1982), requires special consideration. The contract contained a forum selection clause specifying Dallas County, Texas, and a choice-of-law provision specifying Texas law. The Appellant

---

[1] For this statement, Magi cited Jones v. Weibrecht, 901 F.2d 17 (2d Cir. 1990), a case in which the parties' agreements included a forum selection clause but not a choice-of-law clause. In the absence of a choice-of-law clause, the issue was whether federal or state law should apply to interpret a choice of forum clause, and we applied federal law. See id. at 18-19.

4

contended that Texas law disfavors enforcement of forum-selection clauses and urged that the forum selection clause not be enforced.  We ruled that following the choice-of-law clause would render the forum selection clause meaningless, which could not have been the intention of the parties. See id. at 722.  Bense is the rare, perhaps unique, case where adherence to the law specified in a choice-of-law clause would conflict with a forum-selection clause.[2]

The Third, Ninth, and Tenth Circuits have applied the law specified in a choice-of-law provision to interpret a forum selection clause. See General Engineering Corp. v. Martin Marietta Alumnia, Inc., 783 F.2d 352, 358 (3d Cir. 1986). Colonial Leasing Co. of New England, Inc. v. Pugh Borothers Garage, 735 F.2d 380, 382 (9th Cir. 1984); Yavuz v. 61 MM, Ltd., 465 F.3d 418, 428-30 (10th Cir. 2006).  The Seventh Circuit has

---

[2] In one case, we said that Klaxon requires a court to look to the forum's choice-of-law rules and see if the state law thus selected would honor the parties' choice of law. See Walter E. Heller & Co. v. Video Innovations, Inc. 730 F.2d 50, 52 (2d Cir. 1984).  Our Court cited Perrin v. Pearlstein, 314 F.2d 863 (2d Cir. 1963), but there is nothing in that opinion to indicate that the parties had agreed to a choice-of-law clause; indeed, the alleged contract was oral.  However, the state case cited in Walter E. Heller, Haag v. Barnes, 9 N.Y. 2d 5554, 216 N.Y.S.2d 65 (1961), does indicate that New York does not always honor the choice of law made by the parties, but looks to the law of the state which has the most significant contacts with the matter in dispute.

5

stated that "[s]implicity argues for determining the validity and meaning of a forum selection clause . . . according to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears," Abbott Laboratories v. Takeda Pharmaceutical Co., 476 F.3d 421, 423 (7th Cir. 2007), unless "that choice would impose significant costs on third parties or on the judicial system," see id.

Some opinions from other circuits have stated that federal law applies to the interpretation of forum selection clauses, but nearly all such statements were made with respect to agreements that either had no choice-of-law clause, or, if the parties had included such a clause, neither party urged its application to interpretation of the forum selection clause. Among the decisions applying federal law to the interpretation of a forum selection clause in the absence of a choice-of-law provision are Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988), Karl Koch Erecting Co. v. New York Convention Center, 838 F.2d 656, 659-60 (2d Cir. 1988), and Stewart Organization, Inc. v. Ricoh Corp., 810, F.2d 1066, 1067-71 (11th Cir. 1987) (in banc), aff'd without consideration of this point, 487 U.S. 22 (1988). In Sun World Lines, td. v. March Shipping Corp., 801 F.2 1066, 1068 (8th

6

Cir. 1986), the contract contained a forum selection clause specifying a competent court of Germany and a choice-of law provision specifying German law. The Court, citing The Bremen, apparently applied federal law to enforce the forum selection clause and made no reference to the choice-of-law provision, perhaps because neither party urged its application.

The basic principle of freedom of contract permits the parties to specify via a choice-of-law clause which jurisdiction's law should apply to the interpretation of their forum selection clause, unless, as the Seventh Circuit has suggested, "that choice would impose significant costs on third parties or on the judicial system." Abbott Laboratories, 476 F.3d at 423.

In the pending case, the parties' choice-of-law clause directs us to English law, they agree that English law should be applied in interpreting their forum selection clause, and, quite properly, we have done so.