DAVID N. HURD, United States District Judge
MEMORANDUM-DECISION and ORDER
I. INTRODUCTION
On October 30, 2018, plaintiffs husband and wife Howard Commander ("Howard") and Elizabeth Commander ("Elizabeth") (collectively "plaintiffs" or the "Commanders") brought suit against defendant American Cruise Lines, Inc. ("defendant" or "ACL"), alleging two claims: (1) negligence and (2) loss of consortium. On January 18, 2019 defendant moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the Complaint, or in the alternative, to change venue pursuant to 28 U.S.C. § 1404(a). The motion has been fully briefed and was considered on the basis of the submissions without oral argument.
II. BACKGROUND
The following facts are drawn from the Complaint and accepted as true for purposes of the motions.
The Commanders are residents of Columbia County, New York. Compl. ¶ 1. Defendant ACL is a foreign corporation doing business in New York, with a principal place of business in Guilford, Connecticut. Id. ¶ 2.
In October 2017, the Commanders entered into an agreement with ACL to take a cruise on waterways in Oregon and Washington. Id. ¶ 3. On October 4, 2017 *184 while onboard defendant's ship, Howard attempted to use the bathroom in his cabin. Id. ¶ 6. The shower door was misaligned and captured his thumb, resulting in a one-third amputation of his thumb. Id. ¶ 7. He also suffered tissue and nerve damage. Id. Further, needing to seek medical attention, the Commanders were forced to end the cruise prematurely. Id. ¶ 8. Plaintiffs contend defendant was negligent in failing to properly maintain the bathroom and in addition to the injuries sustained by Howard, Elizabeth lost the services, consortium, and society of her husband. Id. ¶ 12.
For purposes of the motion to transfer, also considered were plaintiffs' "Cruise Confirmation Receipt" ("Receipt"); Boarding Passes; and the Terms and Conditions of Passage (the "Contract") referenced in defendant's Memorandum of Law in Support of its motion and attached to Attorney Carton's Declaration, see Carton Decl., Exs. A-C; and plaintiffs' affidavits in opposition to defendant's motion, see H. Commander and E. Commander Affs. Further considered were the "General Information Brochure" (the "Brochure"); screenshots of the Commanders' Resco profiles ("Resco screenshots"); and the document packet sent four months prior to plaintiffs' scheduled departure (the "Documentation") referenced in defendant's Reply Memorandum of Law in Further Support of its motion and attached to ACL Vice-President Paul Taiclet's Declaration, see Taiclet Decl., Exs. A-D, as relevant to defendant's motion to transfer. See e.g., Matthews v. Bell, No. 6:18-CV-06460, 2019 WL 1117512, at *1 (W.D.N.Y. Mar. 11, 2019) (noting materials outside the complaint may be considered for purposes of a § 1404(a) motion) (citing Mohsen v. Morgan Stanley & Co. Inc., No. 11 CIV. 6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) ("In deciding a motion to transfer, a court may consider material outside of the pleadings.")); Citibank N.A. v. Affinity Processing Corp., 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) (noting that a motion under § 1404(a) should be supported by affidavits and other materials outside the pleadings).
III. DISCUSSION
Defendant's motion both attacks the merits of plaintiffs' Complaint and seeks transfer of the matter based on a forum-selection clause. "It is well-settled that a court should resolve issues of jurisdiction and venue before addressing merits-based arguments." Edme v. Internet Brands, Inc., 968 F. Supp. 2d 519, 523 n.4 (E.D.N.Y. 2013). Moreover, a party "should benefit from the forum selection clause[ ] for which it bargained at the earliest possible time." Magi XXI, Inc. v. Stato Della Citta Del Vaticano, 818 F. Supp. 2d 597, 621 (E.D.N.Y. 2011), aff'd, 714 F.3d 714 (2d Cir. 2013). Accordingly, before considering the merits of plaintiffs' Complaint, it must first be determined whether the matter should be transferred to the United States District Court for the District of Connecticut.
A. Motion to Transfer
ACL seeks to transfer this matter pursuant to 28 U.S.C. § 1404(a) based on the Contract's forum-selection clause. Plaintiffs dispute that they are bound by anything in the Contract.
A forum-selection clause "may be enforced through a motion to transfer under § 1404(a)." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 59, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have *185 been brought or to any district or division to which all parties have consented." § 1404(a). " Section 1404(a) is merely a codification of the doctrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." Atl. Marine, 571 U.S. at 60, 134 S.Ct. 568.
B. The Forum-Selection Clause [1]
The instant forum-selection clause provides in relevant part:
FORUM SELECTION CLAUSE ...: It is agreed by and between Passenger and ACL that all disputes, claims, suits, and matters whatsoever arising under or relating to this Contract or Passenger's Cruise, including travel to, from, and on the Vessel and any and all Tours or excursions ashore (each a "Claim"), shall be litigated, if at all ... in and before the United States District Court for the District of Connecticut.
Carton Decl. Ex. C, ¶ 8.
"When assessing a motion to transfer on the basis of a forum-selection clause, a court must first determine whether the forum-selection clause is valid and enforceable." United States for use & benefit of Charles T. Driscoll Masonry Restoration, Co. v. Travelers Cas. & Sur. Co. of Am., No. 517CV453, 2017 WL 3701218, at *2 (N.D.N.Y. Aug. 25, 2017) (Kahn, J.). "The enforceability of forum-selection clauses is determined by federal law, while interpretive questions going to their 'meaning and scope' 'are resolved under the substantive law designated in an otherwise valid contractual choice-of-law clause.' " Vulcan Capital Corp. v. Miller Energy Res., Inc., No. 13-CV-8751, 2014 WL 4384159, at *2 (S.D.N.Y. Sept. 4, 2014) (quoting Martinez v. Bloomberg LP, 740 F.3d 211, 224 (2d Cir. 2014) ).
In evaluating the enforceability of a forum-selection clause, courts ask
1) whether the clause was reasonably communicated to the party resisting enforcement; 2) whether the clause is mandatory or permissive, i.e. whether the parties are required to bring the dispute to the designated forum or simply permitted to do so; and 3) whether the claims and parties involved in the suit are subject to the forum selection clause.
Sick Kids (Need) Involved People of N.Y., Inc. v. 1561599 Ontario, Inc., No. 15-CV-3756, 2015 WL 5672042, at *1 (S.D.N.Y. Sept. 25, 2015) (quoting Martinez, 740 F.3d at 217 ). A forum-selection clause is "presumptively enforceable" if it "was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute." Martinez, 740 F.3d at 217. "A party can overcome this presumption only by ... making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. (internal quotations omitted).
"The overriding framework governing the effect of forum selection clauses in federal courts ... is drawn from *186 federal law." Id. "Furthermore, federal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable." Id. (internal quotations omitted).[2]
Plaintiffs do not directly argue that the forum-selection clause is unenforceable. In fact, plaintiffs' Memorandum of Law in Opposition contains no mention of the forum-selection clause. Instead, the Commanders generally argue that they did not receive the Contract, thus they cannot be bound by its Terms and Conditions, whether its statute of limitations or forum-selection clause. They also appear to argue that the Contract in its entirety was not reasonably communicated to them in that any language on their Boarding Passes or elsewhere was not reasonably conspicuous such to advise them of any limitations on their rights.[3]
In support of their position, Howard testified that he "never received a copy of [Contract] at any time." Howard Aff. ¶ 3. Elizabeth's affidavit indicates that she does "not recall receiving [the Contract]." Elizabeth Aff. ¶ 4. Moreover, plaintiffs point out that ACL has provided no documentation establishing that they were in fact provided with the Contract, specifically noting that "defendant has not set forth an affidavit from anyone with personal knowledge to set forth that there was a transmittal" of the documents in question. Pls.' Mem. of Law in Opp'n, 3.
In reply, ACL provided a declaration from Paul Taiclet, ACL Vice President. According to Mr. Taiclet:
ACL uses a software database, Resco, to track communications with potential and booked passengers, and to manage its reservation booking and document distribution process. Each time a potential or booked passenger speaks with a cruise specialist at ACL, notes from the conversation are saved in Resco. ACL markets its cruises by, among other things, mailing brochures in response to requests that it receives either over the phone or through its website. When responding to a brochure request, ACL creates a profile for the person making the request, which is then maintained in Resco.
Taiclet Decl. ¶¶ 3-6.
The Resco screenshots show that Elizabeth made a brochure request to ACL by telephone on March 5, 2017. Id. ¶ 15, Ex.
*187 B. ACL then mailed Elizabeth a brochure in response to her request. Id. Exs. A-B. The Resco screenshots also confirm that on May 10, 2017, Elizabeth reserved cruise tickets, in her and her husband's names, aboard the Queen of the West on a cruise departing from Portland, Oregon on Sunday, October 1, 2017 and returning to Portland, Oregon on October 5, 2017 (the "Cruise"). Id. ¶ 16, Ex. B.
Mr. Taiclet testified that Documentation is routinely sent to passengers: "Approximately four months before the scheduled departure date of a cruise, ACL mails a [computer generated] document packet to confirmed passengers." Id. ¶ 10. The Documentation, as described above, includes the Receipt, Boarding Passes, Contract, information regarding lodging and shore excursions, if applicable, and passenger information form(s) ("PIF"). Id. It is ACL's practice to mail the Documentation and PIF to passengers on the same day that the Documentation is printed. Id. ¶ 11. Therefore, the Documentation "Sent Date" in Resco is automatically populated with the date that the Documentation is printed. Id. ¶ 12.
The Resco screenshots establish that, in accordance with ACL's practices, on June 16, 2017, approximately four months before the Cruise was scheduled to depart, ACL generated and mailed the Documentation to Elizabeth. Id. ¶ 17, Exs. C-D. The Resco screenshots also establish that on August 31, 2017, Elizabeth contacted ACL to request another PIF. Id. ¶ 18, Ex. C. Mr. Taiclet notes that "[b]ecause the PIF is included in the same envelope as the Documentation, Mrs. Commander would not have requested another PIF if she had not also received the Documentation." Id. ¶ 18..
Mr. Taiclet's declaration in conjunction with the attached exhibits establish that the Documentation was sent to Elizabeth four months prior to the Cruise's departure, which, inter alia , contained the Contract. Plaintiffs affidavits fail to refute this. While Howard claims that he "never received a copy of [Contract] at any time," Howard Aff. ¶ 3, that is not surprising because the documentation shows that his wife booked the Cruise and she acknowledges that she never provided the Contract to her husband, Elizabeth Aff. ¶ 5. With respect to Elizabeth's self-serving and vague assertion that she does "not recall receiving [the Contract]," Elizabeth Aff. ¶ 4, it is well-settled that such a non-denial is insufficient to contest receipt, especially in light of the record evidence submitted by ACL establishing that it was sent to her and received by her. See, e.g., Maioriello v. N.Y.S. Office for People With Dev. Disabilities, 272 F. Supp. 3d 307, 334-35 (N.D.N.Y. 2017) (Suddaby, C.J.) (finding plaintiff's failure to recall receiving "anything specific" insufficient to create a genuine dispute of material fact in light of the record evidence submitted by defendants establishing those facts); see also Brown v. St. Paul Travelers Cos., Inc., 331 F. App'x 68, 70 (2d Cir. 2009) (summary order) (finding plaintiff's statement that she has "no recollection or record of receiving" the relevant document, despite the fact that it was distributed on at least six occasions during her tenure, insufficient to raise a genuine issue of material fact); F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses ... do not create genuine issues of material fact.").
The record evidence establishes that the Contract containing the forum-selection clause was communicated to, at a minimum, Elizabeth. The language has mandatory force in that it requires applicable claims to be brought in the United States District Court for the District of Connecticut.
*188 The clause clearly covers the claims and parties involved in the dispute, and there has been no argument to the contrary. See Martinez, 740 F.3d at 217. The forum-selection clause is therefore presumptively enforceable and the Commanders have failed to make "a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id.
With confidence that plaintiffs received the Contract and that the forum-selection is enforceable, it is now proper to consider whether transfer is appropriate pursuant to 28 U.S.C. § 1404(a).
C. The § 1404(a) Factors
Normally, consideration of a § 1404(a) transfer motion requires evaluation of both the private interests of the parties and public-interest considerations. Atl. Marine, 571 U.S. at 62, 134 S.Ct. 568. But the evaluation changes when a valid forum-selection clause is involved. As the Supreme Court laid out:
Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." § 1404(a) ). The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." Stewart, 487 U.S. at 31 [108 S.Ct. 2239]. The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." Id. at 33 [108 S.Ct. 2239] (KENNEDY, J., concurring). For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. at 33 [108 S.Ct. 2239] (same).
Atl. Marine, 571 U.S. at 62-63, 134 S.Ct. 568.
The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in the following three ways: (1) a "plaintiff's choice of forum merits no weight ... [and] as the party defying the forum-selection clause, has the burden of establishing that transfer to the forum for which the parties bargained is unwarranted"; (2) a court may consider arguments about public-interest factors only; arguments about the parties' private interests should not be considered; and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." Id. at 63-64, 134 S.Ct. 568. "[T]he practical result is that forum-selection clauses should control except in unusual cases." Id at 64, 134 S.Ct. 568.
In this case, plaintiffs' choice to file suit in the Northern District of New York carries no weight. As the party seeking to nullify the forum-selection clause, the Commanders bear the burden of establishing that transfer to the District of Connecticut is unwarranted. They have failed to satisfy their burden. They have shared no public-interest factors that would suggest a transfer is inappropriate and in fact have provided no reason whatsoever as to why this matter should not be transferred except to argue that they did not receive or do not recall receiving the Contract containing the forum-selection clause.
After weighing the relevant § 1404(a) factors and the additional factors necessitated by the existence of a valid forum-selection clause, defendant's motion to *189 transfer will be granted. Accordingly, there is no need to consider defendant's motion to dismiss based on statute of limitations grounds.
IV. CONCLUSION
For all the foregoing reasons, defendant's motion will be granted to the extent that the matter will be transferred to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404(a). Consideration of the merits of plaintiffs' Complaint is left to the United States District Court for the District of Connecticut and accordingly no ruling is made on that portion of defendant's motion seeking dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6).
Therefore, it is
ORDERED that
1. Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) is GRANTED;
2. Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED without prejudice as moot; and
3. The Clerk of the Court is directed to effectuate the transfer of this matter to the United States District Court for the District of Connecticut upon entry of this Memorandum-Decision and Order.
IT IS SO ORDERED.

Forum-selection clauses may be enforced either through a motion to dismiss or a § 1404(a) motion to transfer. See TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 475-78 (2d Cir. 2011). In this case, defendant opted to seek transfer. While ACL did move for dismissal, it did so pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, based on its statute of limitations argument.
It is noted that a motion to transfer pursuant to § 1404(a) based on a forum-selection clause seeks an entirely different outcome (that is, transfer) and is an different analysis than that of a motion to dismiss predicated on a forum-selection clause (seeking dismissal).

When disputes arise regarding the interpretation of a forum-selection clause, a district court would "normally apply the body of law selected in an otherwise valid choice-of-law clause." Martinez, 740 F.3d at 218. The Contract at hand contains a choice-of-law clause selecting federal maritime law, but the parties have raised no arguments regarding the interpretation of the forum-selection clause; that is there are no arguments going to the forum-selection clauses's meaning and scope. Instead, the issue is enforceability.

It is unnecessary to consider the Commanders' argument that ACL failed to reasonably communicate the terms and conditions of passage. It is well-settled that "courts decline to incorporate a limitations period into a passenger ticket contract when the ticket does not sufficiently alert the passengers as to the restriction on their rights." Spataro v. Kloster Cruise, Ltd., 894 F.2d 44, 46 (2d Cir. 1990) (per curiam). In Spataro, the Second Circuit interpreted the seminal case of Silvestri v. Italia Societa Per Azioni Di Navigazione, 388 F.2d 11 (2d Cir. 1968) "to require that sea carriers reasonably communicate any limitations period to their passengers." Spataro, 894 F.2d at 46. The Commanders argue that because the documents they received did not contain a "red line notice," they were not sufficiently alerted as to the restriction on their rights. Any argument as to "reasonable communication" is irrelevant to receipt of the Contract or application of the forum-selection clause; Spataro applies with respect to a statute of limitations period and is irrelevant to the validity of the instant forum-selection clause.